UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>LEVON SIMMONS, )<br>)<br>Defendant. )<br>_____ ) | Criminal No. 15-0025 (PLF) |

## OPINION AND ORDER

Defendant Levon Simmons has filed an Emergency Motion for Compassionate Release ("Def. Mot.") [Dkt. No. 439] requesting a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in order to care for his son following the death of the child's mother, and so that he can appeal an order granting custody of his son to a cousin of the child's mother. See Def. Mot. at 3; Response to September 23, 2021 Court Order ("Def. Second Suppl.") [Dkt. No. 472] at 2. The United States opposes Mr. Simmons's motion, arguing that he has failed to establish that a sentence reduction is warranted and that he should serve the remainder of his sentence to account for the serious nature of his offense. Government's Opposition to Defendant's Emergency Motion for Compassionate Release ("Gov't Opp.") [Dkt. No. 449] at 1, 16-20, 24. For the following reasons, the Court will deny Mr. Simmons's motion without prejudice.[1]

---

[1] The documents that the Court has reviewed in connection with the pending motion include: Indictment ("Indictment") [Dkt. No. 1]; Superseding Indictment ("Superseding Indictment") [Dkt. No. 40]; Notice of Prior Convictions and Sentencing Enhancement ("Notice of Prior Convictions") [Dkt. No. 284]; Plea Agreement ("Plea Agreement") [Dkt. No. 285]; Factual Proffer in Support of Guilty Plea ("Factual Proffer") [Dkt. No. 286]; Plea Agreement as to Christopher Ford ("Ford Plea Agreement") [Dkt. No. 287]; Plea Agreement as to Anthony

## I. BACKGROUND

On March 3, 2015, the United States charged Mr. Simmons, alongside six co-defendants, with five counts pertaining to conspiracy to distribute phencyclidine ("PCP"). Indictment at 2, 4-5; see also Superseding Indictment at 1-2, 4-5, 7. On June 23, 2016, Mr. Simmons pled guilty to conspiracy to distribute and possess with intent to distribute one hundred grams or more of a mixture containing PCP, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(iv). Plea Agreement at 1. The United States filed a notice of Mr. Simmons's prior felony drug conviction, pursuant to 21 U.S.C. § 851, triggering a statutory mandatory minimum sentence of 10 years, or 120 months. See Notice of Prior Convictions; 21 U.S.C. § 841(b)(1)(B). On September 15, 2016, the Court sentenced Mr. Simmons to 120 months of imprisonment and 96 months of supervised release. Judgment at 2-3. At the time Mr. Simmons filed his reply brief, he had served approximately 74 months of his 120-month sentence. Def. Reply at 15; Def. Ex. 11 at 3.

Mr. Simmons's son, L.A., was three years old when Mr. Simmons was sentenced. PSR ¶ 81; Def. Mot. at 5. Prior to Mr. Simmons's incarceration, L.A. lived with his mother,

---

Hager ("Hager Plea Agreement") [Dkt. No. 289]; Presentence Investigation Report ("PSR") [Dkt. No. 314]; Judgment ("Judgment") [Dkt. No. 328]; Emergency Motion for Compassionate Release ("Def. Mot.") [Dkt. No. 439]; Defense Exhibit 1 – Communications with Warden ("Def. Ex. 1") [Dkt. No. 439-2]; Sealed Defense Exhibit 3 – Accurint Report ("Sealed Def. Ex. 3") [Dkt. No. 440-2]; Defense Exhibit 5 – Simmons Letter ("Def. Ex. 5") [Dkt. No. 439-4]; Government's Opposition to Defendant's Emergency Motion for Compassionate Release ("Gov't Opp.") [Dkt. No. 449]; Government Exhibit 3 – Inmate Discipline Data ("Gov't Ex. 3") [Dkt. No. 449-3]; Reply in Support of Emergency Motion for Compassionate Release ("Def. Reply") [Dkt. No. 450]; Defense Exhibit 11 – Updated Sentence Computation ("Def. Ex. 11") [Dkt. No. 450-2]; Government's Supplemental Brief in Response to Court's Order ("Gov't Suppl.") [Dkt. No. 456]; Supplement to Compassionate Release Reply ("Def. First Suppl.") [Dkt. No. 463]; Defense Exhibit 13 – Family Court Docket ("Def. Ex. 13") [Dkt. No. 463-1]; Transcript of Change of Plea Proceedings ("Sentencing Tr.") [Dkt. No. 466]; Transcript of Plea Hearing ("Plea Tr.") [Dkt. No. 467]; and Response to September 23, 2021 Court Order ("Def. Second Suppl.") [Dkt. No. 472].

Chevella Coleman. PSR ¶ 81. Mr. Simmons also lived with Ms. Coleman "on and off," id. ¶ 83, and according to Mr. Simmons, he and Ms. Coleman were "jointly raising" L.A., Def. Mot. at 3. On August 31, 2020, Ms. Coleman died of cervical cancer. See Def. Mot. at 3; Sealed Def. Ex. 3 at 3. According to Mr. Simmons, a "rotating group of family members" began caring for L.A. following Ms. Coleman's death. Def. Mot. at 3. Mr. Simmons reports that his own mother, Linda Williams, would have taken responsibility for L.A., but that her chronic obstructive pulmonary disease prevented her from caring "for an energetic and grieving child alone." Id.

On January 6, 2021, Ms. Coleman's cousin, Anquneta Coleman, initiated child custody proceedings concerning L.A. in the Circuit Court for Prince George's County, Maryland. See Def. Mot. at 3; Def. Ex. 13 at 2.[2] On March 21, 2021, Mr. Simmons moved for compassionate release "so that he can ensure that his parental rights are not terminated and be the stable and loving presence his son needs." Def. Mot. at 3. On July 28, 2021, the Circuit Court for Prince George's County awarded "sole physical and legal custody" of L.A. to Anquneta Coleman. Def. Suppl. Reply at 1; see also Def. Ex. 13 at 4.

## II. LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed . . . but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011) (internal quotation marks and citation omitted). One such exception is codified at 18 U.S.C. § 3582(c)(1)(A). As modified by the First Step Act in 2018, Section 3582(c)(1)(A) allows courts to alter a sentence upon a motion

---

[2] The Court infers that Anquneta Coleman is Chevella Coleman's cousin based on Mr. Simmons's representation that "[L.A.] has now been moved to live with Ms. Coleman's cousin, who has recently initiated child custody proceedings," Def. Mot. at 12, and the fact that Anquneta Coleman is listed as the plaintiff in the custody proceeding, Def. Ex. 13 at 2.

3

by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(A).

A defendant who seeks compassionate release pursuant to Section 3582(c)(1)(A) must establish "extraordinary and compelling reasons" for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). In evaluating this factor, courts historically have looked to a policy statement promulgated by the U.S. Sentencing Commission in 2018, which describes several categories of circumstances that may qualify as "extraordinary and compelling." See U.S. SENT'G GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 cmt. n.1 (U.S. SENT'G COMM'N 2018). Because the Sentencing Commission has not updated the policy statement "to reflect the First Step Act's changes," United States v. Long, 997 F.3d 342, 348 (D.C. Cir. 2021), including the fact that defendants themselves may now move for compassionate release, the D.C. Circuit has held that the policy statement "is not 'applicable' to defendant-filed motions," id. at 355. In the wake of Long, district courts must "assess whether [a defendant] has demonstrated 'extraordinary and compelling reasons' . . . without treating U.S.S.G. § 1B1.13 as binding." United States v. Johnson, 858 F. App'x 381, 384 (D.C. Cir. 2021) (per curiam).

The compassionate release statute instructs courts evaluating whether to reduce a sentence to consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(1)-(2). Consideration of the sentencing factors "requires a discretionary balancing," United States v. Long, 997 F.3d at 360, "with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence," United States v. Johnson, 464 F. Supp. 3d 22, 30 (D.D.C. 2020).

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

On October 7, 2020, Mr. Simmons submitted a letter to the Warden at FCI Rivers, where he was then incarcerated, requesting compassionate release "based on the August 31, 2020 death of Ms. Chevella Coleman, his girlfriend and the mother of their 7-year-old son." Def. Ex. 1 at 2. BOP denied that request on October 26, 2020. Id. at 4-5. The United States concedes that Mr. Simmons has exhausted his administrative remedies "as to his claim regarding the need to care for his son," but argues that he has failed to do so "with respect to the issue of caring for his mother." Gov't Opp. at 14. While Mr. Simmons's compassionate release motion focuses primarily on caring for L.A. and participating in child custody proceedings, it does note that releasing Mr. Simmons "would also benefit Mrs. Williams," Def. Mot. at 17, and contends that "Mrs. Williams's need for additional care" contributes to the extraordinary and compelling nature of Mr. Simmons's circumstances, id. at 18.

The Court agrees with Chief Judge Howell that it is "a dubious proposition" that "an inmate's motion for compassionate release made to a court must be limited to precisely those

5

claims the inmate made to the warden of her facility." United States v. Bikundi, Crim. No. 14-0020-1, 2020 WL 5518465, at *4 (D.D.C. Sept. 14, 2020). But even if there were such a requirement, Mr. Simmons's letter to the warden at FCI Rivers was sufficient to "give BOP fair notice" of Mrs. Williams's medical condition and its relevance to Mr. Simmons's compassionate release request. United States v. Shepard, Crim. No. 07-0085, 2021 WL 848720, at *2 (D.D.C. Mar. 4, 2021). The letter explained that L.A. was "in the custody of Mr. Simmons's 67-year-old mother, Linda Williams, who has chronic obstructive pulmonary disease (COPD)," and that "when caring for the young boy becomes too much for Mrs. Williams, [he] has had to stay with a variety of other family members." Def. Ex. 1 at 2-3. The Court is not precluded from considering Mrs. Williams and her medical condition in evaluating Mr. Simmons's circumstances.

### B. Extraordinary and Compelling Reasons

Mr. Simmons seeks compassionate release so that he can care for L.A. in the wake of Ms. Coleman's death and safeguard his parental rights. Def. Mot. at 3; Def. Second Suppl. at 2. He argues that "[a]ltogether, Ms. Coleman's death and L.A.'s circumstances, together with Mr. Simmons's need to participate in child custody proceedings, Mrs. Williams's need for additional care, and Mr. Simmons's good conduct in prison, constitute extraordinary and compelling circumstances supporting Mr. Simmons's release." Def. Mot. at 18.

#### 1. Providing Care for L.A.

Mr. Simmons asserts that "L.A. has lived since Ms. Coleman's death in a variety of locations and with many people on his mother's side of the family." Def. Mot. at 11-12. He argues that these circumstances have "likely served to destabilize [L.A.]" as he grieves for his

mother, id. at 13, and that "[i]f released, Mr. Simmons will be able to give L.A. the stability and love he needs," id. at 14.

Ms. Coleman's death undoubtedly was a devastating and disruptive event in L.A.'s life. Yet the information available to the Court suggests that after Ms. Coleman passed away, Anquneta Coleman undertook to care for L.A. on a permanent basis. According to the docket of the custody case before the Circuit Court for Prince George's County, Maryland, Anquneta Coleman petitioned for custody of L.A. on January 6, 2021. Def. Ex. 13 at 2. Mr. Simmons represents that as early as March of 2021, L.A. was living with Anquneta Coleman. Def. Mot. at 12. Following a hearing on July 16, 2021, the Prince George's County court awarded "sole physical and legal custody of the minor child" to Anquneta Coleman. Def. Ex. 13 at 3. The fact that Anquneta Coleman brought the custody petition and pursued it over the course of more than six months suggests a commitment to providing consistent, long-term care for L.A. It no longer appears to be the case that L.A. is "be[ing] taken care of by a rotating group of family members, who . . . cannot provide him with the stability he needs in the wake of his mother's death," as Mr. Simmons initially argued. Def. Mot. at 3.

In addition, the Prince George's County court was apparently aware when it made its custody determination that Mr. Simmons was incarcerated but wished to remain involved in L.A.'s care. On March 17, 2021, that court received Mr. Simmons's pro se answer to the custody petition. Def. Ex. 13 at 3. In response, it forwarded Mr. Simmons's pro se pleading to its Paralegal Unit "for review, at the request of the presiding judge." Id. That court also contacted the Rivers Correctional Institute to verify whether Mr. Simmons was incarcerated there "so that this Court can address the issues appropriately." Id.

7

Mr. Simmons raises concerns about his ability to meaningfully participate in the custody case, recounting that "court documents related to [Mr. Simmons's] answer were [] sent to Mr. Simmons at a prison at which he was no longer incarcerated (Rivers), they were returned to the Circuit Court for Prince George's County, and it does not appear from the docket that any further attempts were made to send those documents to Mr. Simmons at his correct address at FCI Petersburg." Def. First. Suppl. at 2. Mr. Simmons also asserts that a counselor at FCI Petersburg informed him "in early May 2021 . . . that he had a video court date," but that "Mr. Simmons was never again advised about the hearing and no video hearing ever occurred at his prison." Id.

The Court does not doubt that the fact that Mr. Simmons was incarcerated made it more difficult for him to participate in the custody proceeding. Nonetheless, the Prince George's County Court – acting with knowledge of Mr. Simmons's circumstances – determined that the appropriate course of action was to hold a custody hearing on July 16, 2021, without Mr. Simmons present, and following that hearing, to award "sole physical and legal custody of the minor child" to Anquneta Coleman. Def. Ex. 13 at 3. That court presumably concluded that Anquneta Coleman was a suitable guardian for L.A. and that awarding custody to her was in L.A.'s best interest.

The availability of Anquneta Coleman as an alternative caregiver – and the formal award of custody to her – substantially undermines the rationale behind releasing Mr. Simmons to care for L.A. Mr. Simmons notes that "[o]ther courts have granted compassionate release to allow parents to . . . care for their minor children once the other parent has died." Def. Mot. at 16. Yet in such circumstances, courts consistently have emphasized the inadequacy or unavailability of alternative caregivers. See, e.g., Order at 7-8, United States v. Ochoa, Crim.

No. 18-3945 (C.D. Cal. Feb. 19, 2021) [Dkt. No. 70] (while "[i]t does not appear that L.'s other caregivers . . . are incapacitated or deceased," "[n]o one in the family appears able to provide th[e] help" that the defendant's minor child required); United States v. Turner, Crim. No. 18-0142, 2020 WL 5717096, at *4 (E.D. Wis. Sept. 24, 2020) (granting compassionate release where the mother of the defendant's daughter died and the daughter was in the care of a maternal grandmother who "cannot care for the girl on her own"); United States v. Little, Crim. No. 14-0190, 2020 U.S. Dist. LEXIS 142524, at *6 (S.D. Ind. Aug. 10, 2020) ("Mr. Little has established 'extraordinary and compelling reasons' for his release . . . . The mother of Mr. Little's minor children died, and there are no other relatives available to care for them."); United States v. Fortson, Crim. No. 18-0063, 2020 WL 3963729, at *3 (S.D. Ind. Jul. 13, 2020) ("The mother of Mr. Fortson's minor child died, leaving him in the care of [] maternal relatives who are not able to care for him long-term.").

Mr. Simmons also argues that the Sentencing Commission's 2018 policy statement "supports a conclusion here that Ms. Coleman's death is an extraordinary and compelling reason for Mr. Simmons's release," Def. Reply at 7, because it provides that "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" may justify a sentence reduction, U.S.S.G. § 1B1.13 cmt. n.1(C)(i). While not controlling, the policy statement nonetheless may "guide[] the Court" in exercising its discretion. United States v. Speaks, Crim. No. 18-0111-1, 2021 WL 3128871, at *3 (D.D.C. July 23, 2021). The language of the policy statement does not preclude the possibility that circumstances similar to those of Mr. Simmons could qualify as extraordinary and compelling; however, "that policy statement suggests that family circumstances should warrant release only in extreme circumstances." Id. at *3 (quoting United States v. Piles, Crim. No. 19-0292-5, 2021 WL 1198019, at *2 (D.D.C.

9

Mar. 30, 2021)). At least one judge in this district has concluded that the circumstances described in the policy statement "do not encompass . . . serving as a second caregiver to minor children." United States v. Piles, 2021 WL 1198019, at *2 (quotation marks omitted).

Here, Anquneta Coleman is available to care for L.A. and the Circuit Court for Prince George's County has determined that she is a suitable caregiver. For this Court to now find that Mr. Simmons's circumstances are "extraordinary and compelling" based on a need to care for L.A. would require it to "weigh in on the merits of the custody case." Gov't Opp. at 17.

2. Preservation of Parental Rights

Mr. Simmons also argues that a sentence reduction is necessary so that he can "appeal the child custody decision and remain in his son's life." Def. First Suppl. at 2. According to the Presentence Investigation Report, Mr. Simmons was indeed a presence in L.A.'s life prior to his incarceration. While L.A. "reside[d] with his mother Chevella Coleman," PSR ¶ 81, "Mr. Simmons reported living with Chevella Coleman . . . for the last three years 'on and off,'" id. ¶ 83, and asserted that he saw L.A. "daily prior to his arrest," id. ¶ 82. Even after Mr. Simmons was incarcerated, Ms. Coleman reportedly "prioritized L.A.'s relationship to Mr. Simmons" by taking him to the prison to visit his father, Def. Mot. at 10, and "bring[ing] L.A. over to Mrs. Williams's home as often as Mrs. Williams wanted her to," id. at 11.

Now, however, Mr. Simmons reports that "[Ms. Coleman's] family will not engage with him as the father of his child," Def. Mot. at 15, and that "Mrs. Williams and Mr. Simmons's calls to the maternal family go unanswered," Def. Reply at 9. According to Mr. Simmons, Ms. Coleman's death therefore "severed [L.A.'s] connection to his father and his grandmother." Def. Mot. at 11. Yet this breakdown in family ties and communications, while distressing, is not a basis for a sentence reduction. Again, it is not the province of this Court to

conclude that Anquneta Coleman, who now has been awarded custody of L.A., should make different decisions about L.A.'s interactions with Mr. Simmons. To the extent that such issues are appropriate for judicial resolution at all, they fall to the family court.

In a related vein, Mr. Simmons argues that the Court should reduce his sentence "so that he is able to properly and forcefully appeal the decision to award custody of his son to Anquneta Coleman." Def. First. Suppl. at 2. While the Court is sympathetic to the barriers Mr. Simmons faces as a result of his incarceration, it is not persuaded that his desire to appeal the custody decision, on its own, justifies a sentence reduction. Mr. Simmons identifies a number of cases in which courts have granted compassionate release to defendants who faced threats to their parental rights. See Def. Mot. at 16-17; Def. Ex. 9; Def. Reply at 10-13. In these cases, however, other considerations informed the court's decision to grant compassionate release, such as the threat of COVID-19 in prisons, see Memorandum and Order at 1, 6, United States v. Coleman, Crim. No. 4:18-0075 (E.D. Mo. Nov. 16, 2020) [Dkt. No. 82], or the unavailability of other suitable caregivers, see United States v. Murry, Crim. No. 15-0153, 2021 WL 795451, at *5 (S.D. Ind. Mar. 2, 2021). Mr. Simmons is not seeking release based on the COVID-19 pandemic, and as discussed above, L.A. now has a permanent caregiver that the family court has deemed suitable. In contrast to United States v. Ochoa, upon which Mr. Simmons relies, the Court has before it no evidence that L.A. faces other "serious difficulties" for which no other family member "appears able to provide [] help," such as a "deterioration in mental health and suicidal ideation." Order at 8, United States v. Ochoa, Crim. No. 18-3945 (S.D. Cal. Feb. 19, 2021) [Dkt. No. 70].

It also is not clear that Mr. Simmons would be able to challenge the custody decision if he were released. Defense counsel represents that she "understands that Mr.

Simmons sent an appeal once he received the [custody] decision, but that he has not heard anything since then," and that "[i]t is unclear whether Mr. Simmons's appeal was docketed." Def. Second Suppl. at 1. In other words, Mr. Simmons may not even have a viable avenue through which to pursue his appeal. This speculative possibility of an appeal is an insufficient basis for reducing Mr. Simmons's sentence.

### 3. Providing Care for Mrs. Williams

Mr. Simmons notes that his release "would also benefit Mrs. Williams," with whom Mr. Simmons would live if released. Def. Mot. at 17. The Court agrees with other judges in this district who have held that a desire to care for an elderly relative generally does not establish extraordinary and compelling reasons within the meaning of the compassionate release statute. See United States v. Shabazz, 502 F. Supp. 3d 194, 197 (D.D.C. 2020); United States v. Goldberg, Crim. No. 12-0180, 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020). Here, the information in Mr. Simmons's motion does not establish a situation of such extreme urgency to justify an exception to that general principle. Cf. United States v. Walker, Crim. No. 11-0270, 2019 WL 5268752, at *3 (N.D. Ohio Oct. 17, 2019) (finding extraordinary and compelling reasons where the defendant's mother was "suffering from Acute Myeloid Leukemia," requiring "expensive, non-traditional treatment," and the defendant had "an unusual and lucrative job opportunity that would allow him to assist with his mother's medical costs").

The Court therefore concludes that none of the considerations raised in Mr. Simmons's brief, either individually or collectively, establish extraordinary and compelling reasons for a sentence reduction.

*C. Sentencing Factors*

The Court also concludes that the sentencing factors set forth in 18 U.S.C. § 3553(a) do not support granting Mr. Simmons's motion for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). The "nature and circumstances of [Mr. Simmons's] offense," 18 U.S.C. § 3553(a)(1), were extremely serious. He conspired with six co-defendants to "acquire, cut, store, repackage, distribute and possess with the intent to distribute PCP," over the course of at least seven months. Factual Proffer at 3. Mr. Simmons's own conduct involved possession of a firearm in relation to this conspiracy. Sentencing Tr. 17:18-24, 22:03-04. The record suggests that Mr. Simmons was especially culpable even in comparison to his co-defendants. While the United States charged the other defendants with conduct involving either a mixture containing a "detectable amount" of PCP or 100 grams or more of such a mixture, it charged Mr. Simmons with conduct involving one kilogram or more of such a mixture. Superseding Indictment at 2-4. Mr. Simmons acknowledged in his plea that he was accountable for between 400 and 700 grams of a mixture containing PCP. Plea Agreement at 2.

Given that Mr. Simmons was accountable for by far the greatest quantity of PCP, the fact that he has already "served far more" time than his co-defendants Christopher Ford and Anthony Hager, Def. Reply at 15, is unsurprising and does not weigh in favor of a sentence reduction. Mr. Simmons repeatedly quotes a statement in the Presentence Investigation Report that "Ford and Hager [we]re the higher level drug distributors in this conspiracy," whereas "Simmons appears to have been an average participa[nt] in the conspiracy." Def. Mot. at 4 (quoting PSR ¶¶ 46-47); see also id. at 18; Def. Reply at 15. Yet irrespective of this descriptive characterization, the Sentencing Guidelines range applicable to Mr. Simmons's offense – 84 to 105 months – greatly exceeded the ranges applicable to Messrs. Ford and Hager's offenses,

which the parties estimated as 37 to 46 months and 30 to 37 months, respectively. See PSR ¶ 115; Ford Plea Agreement at 4; Hager Plea Agreement at 4. Together with the charging decisions of of the grand jury and the prosecution, as reflected in the superseding indictment, these Sentencing Guidelines calculations further suggest that Mr. Simmons was particularly culpable as compared to his co-defendants.

The fact that much of the time remaining on Mr. Simmons's sentence results from the statutory mandatory minimum also does not support a sentence reduction. Mr. Simmons contends that "[t]he remainder of his sentence is based primarily on prosecutor whims," because the United States opted to file a notice of prior conviction pursuant to 21 U.S.C. § 851. Def. Reply at 18; see also id. at 15-22. In fact, Mr. Simmons had the opportunity to choose between two possible plea agreements, both of which entailed a ten-year mandatory term. See Plea Tr. 32:13-24; Sentencing Tr. 23:06-22. Under one option, Mr. Simmons could have acknowledged responsibility for one kilogram or more of PCP and the United States would have withdrawn the Section 851 notice. Mr. Simmons still would have faced a ten-year mandatory term based on the quantity of PCP. Sentencing Tr. 23:06-22; see also Plea Tr. 32:13-24. Mr. Simmons chose the other option and pled guilty to a lesser quantity of PCP, understanding that the United States would not withdraw the Section 851 notice. Sentencing Tr. 23:06-22; Plea Tr. 28:09-13, 62:07-13. It therefore is not the case that "but for the § 851 enhancement" Mr. Simmons could have been sentenced in the range of 84 to 105 months. Def. Reply at 14-15. That range would only have applied if the United States had withdrawn the Section 851 notice and allowed Mr. Simmons to plead to the lesser quantity of PCP. Such an agreement was never on the table. See Plea Tr. 32:13-24; Sentencing Tr. 23:06-22.

Mr. Simmons has now served more than 74 months, or over 60 percent of his sentence. Def. Reply at 15; Def. Ex. 11 at 2. More than a year of Mr. Simmons's sentence occurred in the midst of the COVID-19 pandemic, during which time he has been "largely locked in his cell, unable to complete programming, fearful of the virus, and unable to see his loved ones." Def. Mot. at 20. The Court recognizes that Mr. Simmons has served substantial time, part of which he has served under exceptionally challenging conditions. Yet given the grave nature of the conduct for which Mr. Simmons was sentenced and his own particularly high level of culpability relative to his codefendants, the Court cannot conclude that the time already served suffices to "reflect the seriousness of the offense," 18 U.S.C. § 3553(a)(2)(A), or to "afford adequate deterrence" to future criminal conduct, 18 U.S.C. § 3553(a)(2)(B).

Mr. Simmons's "history and characteristics," 18 U.S.C. § 3553(a)(1), also do not persuade the Court to grant his motion. Between 2005 and 2009, Mr. Simmons accrued convictions for attempted possession with intent to distribute PCP, possession of PCP, and a Bail Reform Act violation for failure to appear in court. PSR ¶¶ 63-65; Gov't Opp. at 22-23; Def. Reply at 18. As a result, he had a criminal history category of IV by the time he was sentenced in this case. PSR ¶ 17. He also committed the criminal conduct to which he pled guilty in this case: conspiracy to distribute and possess with intent to distribute one hundred grams or more of a mixture containing PCP. Plea Agreement at 1. This history establishes a problematic pattern of failing to comply with the law and a specific tendency toward violations involving PCP.

The Court commends Mr. Simmons's recent record as a productive and rule-abiding inmate. He has used his time in prison to complete his GED, with over 280 hours of classes, as well as to complete a drug abuse education class and a Spanish class. Def. Mot. at 20-21. In his more than six years of incarceration, he has incurred only two disciplinary

infractions. See Gov't Opp. at 23; Gov't Ex. 3 at 1; Def. Reply at 20. Mr. Simmons's statements also indicate that he appreciates and accepts responsibility for the severity of his crime. Mr. Simmons wrote to the Court that he "take[s] full responsibility for [his] actions," explaining that, "[t]he passing of my son [L.A.'s] mother isn't what rehabilitated me," but that he now recognizes "how much I'm needed and [I] know [that] I can't continue to make selfish decisions." Def. Ex. 5 at 2. The Court hopes that when Mr. Simmons is released upon completing his sentence, his commitment to fulfilling his responsibilities as a father will provide an incentive to avoid future criminal activity.

IV. CONCLUSION

Because Mr. Simmons's circumstances lack the extraordinary and compelling character required by the compassionate release statute, and because the sentencing factors in Section 3553(a) weigh against reducing his sentence, the Court will deny Mr. Simmons's motion for compassionate release. It is therefore hereby

ORDERED that Mr. Simmons's Emergency Motion for Compassionate Release [Dkt. No. 439] is DENIED WITHOUT PREJUDICE.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 11/2/21